**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| TEXANS FOR ISRAEL, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 2:24-CV-00167-Z |
| U.S. DEPARTMENT OF THE TREASURY, *et al.*, | |
| Defendants. | |

**DEFENDANTS' APPENDIX IN SUPPORT OF THEIR
MOTION TO DISMISS**

**Table of Appendix**

| Exhibit | Bates Stamps | Description |
|---|---|---|
| 1 | App.0001–App.0012 | Declaration of Lisa M. Palluconi, Acting Director of the Office of Foreign Assets Control, U.S. Department of the Treasury ("OFAC Decl.") |
| 2 | App.0013–App.0022 | Declaration of Amy Holman, Acting Assistant Secretary in the Bureau of Economic and Business Affairs, U.S. Department of State ("State Decl.") |
| 3 | App.0023–App.0028 | Declaration of James Martinelli, Acting Associate Director for the Policy Division of the Financial Crimes Enforcement Network, U.S. Department of the Treasury ("FINCEN Decl.") |

Dated: October 15, 2024

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

BRIGHAM J. BOWEN
Assistant Branch Director

/s/  *Amy E. Powell*
AMY POWELL

Senior Trial Counsel
DOROTHY CANEVARI
ALEXANDER N. ELY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Washington, DC 20005
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2024, I electronically filed the foregoing Table and attached Appendix with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ Amy E. Powell
AMY E. POWELL
United States Department of Justice

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

TEXANS FOR ISRAEL, *et al.*,

      Plaintiffs,

v.

U.S. DEPARTMENT OF THE TREASURY, *et al.*,

      Defendants.

Civil Action No. 2:24-CV-00167-Z

## DECLARATION OF LISA M. PALLUCONI

I, Lisa M. Palluconi, declare as follows:

1.     I am currently employed as the as the Acting Director of the U.S. Department of the Treasury's (Treasury) Office of Foreign Assets Control (OFAC). I assumed the Deputy Director role in January 2024. Prior to that position, I served as Associate Director, Sanctions, Policy and Implementation, overseeing OFAC's Licensing, Policy, and Regulatory Affairs Divisions. I joined Treasury in 2012, serving in legal and policy roles, including as an attorney-advisor in the Office of the Chief Counsel, Foreign Assets Control; Director for Iran Nuclear Implementation at the National Security Council; and Senior Advisor to OFAC's Director.

2.     I am familiar with the mission and operations of OFAC, and I make this declaration based upon information within my personal knowledge or provided to me in my official capacity.

1

3.      I have been made aware of the Complaint filed in this action by Texans for Israel; Michael Isley; Regavim, A.R.; Meir Deutsch; Yosef Ben Chaim; and Ari Abramowitz. This declaration is made in connection with Defendants' Motion to Dismiss.

OFAC's Mission and Authority

4.      OFAC is responsible for administering U.S. economic sanctions programs. These programs are primarily directed against foreign states and nationals to implement U.S. foreign policy and national security goals. Pursuant to authority delegated by the President to the Secretary of the Treasury, OFAC acts under Presidential wartime and peacetime national emergency powers. In performing its function, OFAC relies primarily on its broad delegated powers under the International Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701-1706. As Acting Director of OFAC, I am responsible for the implementation, administration, and enforcement of such economic sanctions programs, including those under the national emergency declared under Executive Order 14115, "Imposing Certain Sanctions on Persons Undermining Peace, Security, and Stability in the West Bank." (E.O. 14115).

5.      IEEPA grants the President a broad spectrum of powers to deal "with any unusual and extraordinary threat, which has its source in whole or in substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the president declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a). The President has exercised these powers through Executive orders that impose economic sanctions to address particular emergencies. An Executive order blocking property constitutes one of the most potent elements of an economic sanctions program.

2

6.      The Executive order sets standards for subjecting additional entities and individuals to its
sanctions in the future.  If Treasury or the State Department imposes IEEPA blocking sanctions
pursuant to an Executive Order, then that person or entity is referred to as "designated" under
that program and added to OFAC's List of Specially Designated Nationals and Blocked Persons
(SDN List).

7.      OFAC currently administers over 35 economic sanctions programs against foreign
governments, entities, and individuals whose activities conflict with U.S. national security and
foreign policy interests.  For instance, OFAC administers sanctions programs relating to Iran,
Cuba, Syria, and North Korea that are comprehensive country-based sanctions programs.
Several other OFAC sanctions programs, including those relating to Burma, Belarus, Democratic
Republic of the Congo, Nicaragua, Venezuela, and the Western Balkans are "list-based"
programs, narrowly tailored to affect certain activity within a geographic region.  OFAC also
implements sanctions programs relating to activities of concern, such as serious human rights
abuse, corruption, drug trafficking, terrorism, and proliferation of weapons of mass destruction.

8.      IEEPA Executive orders typically direct the blocking of property and property interests
of a sanctioned individual or entity that are within the United States or within the possession or
control of U.S. persons, wherever located.  Consistent with this practice, E.O. 14115 provides
that "[a]ll property and interests in property that are in the United States, that hereafter come
within the United States, or that are or hereafter come within the possession or control of any
United States person are blocked and may not be transferred, paid, exported, withdrawn, or
otherwise dealt in." E.O. 14115. §1(a).  Section 3(a) of E.O. 14115 specifies that this prohibition
includes the making or receipt of "any contribution or provision of funds, goods, or services by,

3

to, or for the benefit of" or from "any person whose property and interests in property are blocked pursuant to this order." *Id.* §§ 3(a) and (b). Accordingly, absent an applicable exemption or authorization, U.S. persons are prohibited from providing funds, goods, or services to, or for the benefit of, a person designated under E.O. 14115.

9.      The prohibition against dealing in property and interests in property of a sanctions target can serve many important objectives. Broadly, the blocking makes it difficult for the target of sanctions to conduct business involving the United States. Unless otherwise authorized, a blocking prevents the designated person from receiving the economic benefits of transactions with U.S. persons or in the U.S. market, and limits the flow of hard currency, goods, and other property to or for the benefit of that sanctions target, preventing the target from using its connections with the United States to further ends that conflict with U.S. interests.

10.     The President included a provision in E.O. 14115 which authorizes imposition of sanctions with no prior notice. Specifically, with regard to designations made pursuant to E.O. 14115, the President stated:

> [B]ecause of the ability to transfer funds and other assets instantaneously, prior notice...of measures to be taken pursuant to this order would render those measures ineffectual. I therefore determine that for these measures to be effective in addressing the national emergency declared in this order, there need be no prior notice of a listing or determination made pursuant to this order.

E.O. 14115, § 8.

Therefore, OFAC does not typically provide prior notice of a pending investigation or impending blocking action and considers its target list of prospective designees under E.O. 14115 as sensitive or classified information. This practice mitigates the significant risk that the subject of an ongoing sanctions investigation, upon discovery of the investigation, would transfer, hide,

4

sell, or destroy assets that could be blocked, destroy or alter records relevant to the investigation, or otherwise frustrate or obstruct the investigation before the sanctions investigation, and potential blocking of assets, could be completed. Such an outcome would frustrate OFAC's law enforcement efforts as well as the President's ability to disrupt and detain the property of the sanctions target.

OFAC Designation and Delisting Process

11.     OFAC's process of designating individuals or entities appropriate for sanctions begins with an extensive investigation. Treasury investigations draw on a broad range of information, which historically has included both publicly available and non-publicly available information, as well as classified information. OFAC investigators then carry out a thorough investigation, including a review of the totality of the information.

12.     Once the evidence is collected, Treasury staff draft an evidentiary memorandum detailing information contained in the various exhibits acquired through their investigation. After an evidentiary package has been reviewed by supervisors in OFAC's Office of Global Targeting office, it is then reviewed for legal sufficiency by Treasury's attorneys. The Department of State and the Department of Justice also provide foreign policy and legal review of OFAC evidentiary packages under E.O. 14115 and certain other programs.

13.     Interagency coordination is a critical part of the designation process. Certain Executive orders, such as E.O. 14115, direct that designations by the Departments of the Treasury and State be undertaken in consultation with one another. Once this interagency process has been completed, for designations issued by OFAC, the final evidentiary package is presented to the OFAC Director for approval and signature pursuant to authority delegated from the Secretary of

5

the Treasury. For designations issued by the Department of State, Treasury provides a legal review of the underlying evidentiary package and the Department of State provides the OFAC Director with a memorandum to sign in order to add persons to the SDN List.

14.     A designated or blocked person may seek to have its designation rescinded by filing a petition pursuant to 31 C.F.R. § 501.807 (hereinafter "delisting petition"). OFAC has public-facing guidance[1] explaining how to submit a petition online or in writing to initiate a review process whereby OFAC will examine materials provided within the delisting application. The request for removal may also include information, such as arguments or evidence that establishes that an insufficient basis exists for the listing or that the circumstances resulting in the listing no longer apply, in accordance with OFAC procedures governing delisting from the SDN List. Any relevant information submitted by a petitioner is considered by OFAC in making a determination with respect to such a challenge, information on which OFAC has in fact relied upon in its determination to grant a delisting petition. After OFAC has conducted a review of the delisting petition it will provide its decision in writing to the petitioner informing them of its decision.

OFAC Licensing Authority

15.     OFAC can mitigate the effects of a designation by providing authorization for certain transactions that would otherwise be prohibited by issuing a license. A specific license may be issued when a person requests authorization to conduct an otherwise prohibited transaction or service not already covered by a general license. *See* 31 C.F.R. § 501.801(b). Regulations administered by OFAC generally do not compel the issuance of specific licenses once certain

---

[1] *See* https://ofac.treasury.gov/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list.

6

criteria are met. Rather, OFAC's blocking authority under IEEPA and implementing Executive

orders grant the agency the discretion to issue or withhold specific licenses based on national

security and foreign policy considerations. OFAC issues specific licenses in a manner consistent

with the national security and foreign policy objectives of the United States. Because the

national security and foreign policy calculus is complex, subtle, and ever-changing, OFAC must

consider all applicants for specific licenses on a case-by-case basis in light of all relevant facts

and circumstances. As of the date of signing of this declaration, OFAC has not received an

application for a specific license from any of the named Plaintiffs.

Executive Order 14115

16.     On February 1, 2024, the President issued E.O. 14115, which declared a national

emergency finding that the situation in the West Bank—in particular high levels of extremist

settler violence, forced displacement of people and villages, and property destruction—has

reached intolerable levels and constitutes a serious threat to the peace, security, and stability of

the West Bank and Gaza, Israel, and the broader Middle East region. E.O. 14115 creates a new

tool for addressing and taking action to deter this violence, which undermines the security of

Israelis and Palestinians alike. Extremist settler violence in the West Bank reached record levels

in 2023 and increased in the immediate aftermath of the Hamas attack on October 7, 2024. The

national emergency declared in E.O. 14115 implements a set of new measures to address actions

that undermine peace, security, and stability in the West Bank. Specifically, E.O. 14115

authorizes the Secretary of State and the Secretary of the Treasury, in consultation with one

another, to sanction foreign persons engaged in actions that threaten the peace, security, or

stability of the West Bank. These actions include directing or participating in acts or threats of

7

violence against civilians, intimidating civilians to cause them to leave their homes, destroying or seizing property, and terrorism.

17.     As of October 15, 2024, OFAC has designated three persons pursuant to E.O. 14115: Mount Hebron Fund, Shlom Asiraich, and Hilltop Youth.  OFAC designated Mount Hebron Fund and Shlom Asiraich on April 19, 2024, for being foreign persons who are responsible for or complicit in, or who have directly or indirectly engaged or attempted to engage in, actions— including directing, enacting, implementing, enforcing, or failing to enforce policies—that threaten the peace, security, or stability of the West Bank, and for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, persons blocked pursuant to E.O. 14115.[2]  OFAC designated Mount Hebron Fund, an Israel-registered non-profit organization based in the West Bank, for establishing an online fundraiser for the benefit of Yinon Levi, who was designated by the State Department on February 1, 2024, in part for having regularly led groups that assaulted Palestinian and Bedouin civilians, threatened them with additional violence if they did not leave their homes, burned their fields, and destroyed their property.  OFAC designated Shlom Asiraich, an Israel-registered non-profit organization based in the West Bank, for establishing an online fundraiser for the benefit of David Chai Chasdai, who also was designated by the State Department on February 1, 2024, in part for having initiated and led a riot that involved setting vehicles and buildings on fire, assaulting Palestinian civilians, and causing damage to property in Huwara, and which resulted in the death of a Palestinian civilian.  OFAC designated the Hilltop Youth on October 1, 2024,[3]

---

[2] *See* https://home.treasury.gov/news/press-releases/jy2281.

[3] *See* https://home.treasury.gov/news/press-releases/jy2622.

8

for being a foreign person that is responsible for or complicit in, or has directly or indirectly engaged or attempted to engage in planning, ordering, otherwise directing, or participating in an act of violence or threat of violence targeting civilians, affecting the West Bank. Hilltop Youth is a violent group comprised of extremist Israeli settlers that have engaged in organized group violence including killings, arsons, assaults, and intimidation intended to drive Palestinian communities out of the West Bank. Of these three designations, only Mount Hebron has sought reconsideration of its designation, and it remains pending with OFAC.

18.     The sanctions authorities included in E.O. 14115 are applicable equally to all foreign persons engaging in the actions covered in the E.O. and are not focused on targeting Jewish beliefs or Jewish religious practice. E.O. 14115 applies to any individual or entity that meets the requirements outlined within it, whether they are Israeli or Palestinian. For example, on June 6, 2024, OFAC implemented a Department of State designation of "Lions' Den," a militant Palestinian group centered in the West Bank. In addition, as discussed below, OFAC does not sanction persons or issue civil monetary penalties for their engagement in activities subject to U.S. constitutional protection.[4]

19.     In addition, the U.S. government has a long track record of using its sanctions authority to target violent extremism and other activities that threaten U.S. foreign policy and national security interests, including through counterterrorism sanctions authorities that target Palestinian terrorist groups such as Hamas. For example, OFAC has imposed eight rounds of sanctions against Hamas since October 7, 2024 pursuant to Executive Order 13224 of September 23, 2001 ("Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to

---

[4] *See* https://ofac.treasury.gov/faqs/1190.

Commit, or Support Terrorism"), as amended by Executive Order 13886 of September 9, 2019

("Modernizing Sanctions To Combat Terrorism"). Such designations of members of Palestinian

terrorist groups have included individuals who would potentially otherwise meet the criteria of

E.O. 14115, but who have already been designated under another authority.

No Sanctions Exposure for U.S. Constitutionally Protected Activity

20.     Additionally, as a matter of general guidance applicable to all sanctions programs, OFAC

has issued public guidance posted on its website[5] making it clear to the public "that

OFAC does not sanction persons for their engagement in activities subject to U.S. constitutional

protection, such as protected speech or religious practice or for their religious beliefs; nor do

U.S. persons violate OFAC sanctions for engaging in such constitutionally protected activity.

Furthermore, additional limitations and authorizations are in place to ensure that U.S. sanctions

do not restrict the exchange of information or informational materials, or personal

communication."

21.     The majority of OFAC sanctions programs are promulgated pursuant to IEEPA, which

limits the authority to "regulate or prohibit, directly or indirectly . . . any postal, telegraphic,

telephonic, or other personal communication, which does not involve a transfer of anything of

value . . . or, the importation from any country, or the exportation to any country, whether

commercial or otherwise, . . . of any information or informational materials." 50 U.S.C. §

1702(b)(1), (3).

22.     Furthermore, no authorization is necessary for U.S. persons to engage in activities that

are not prohibited by or are otherwise exempt from sanctions. OFAC maintains several avenues

---

[5] *Id.*

10

for the public to request guidance on the application of sanctions.[6]  The public can submit inquiries through OFAC's online compliance portal or via a written request for guidance submitted via the U.S. postal service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 11, 2024

Lisa M. Palluconi
Acting Director
Office of Foreign Assets Control
Department of the Treasury

---

[6] *See* https://ofac.treasury.gov/contact-ofac.

11

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

AMARILLO DIVISION

| | |
|---|---|
| TEXANS FOR ISRAEL, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 2:24-CV-00167-Z |
| U.S. DEPARTMENT OF THE TREASURY, et al., | |
| Defendants. | |

**DECLARATION OF AMY HOLMAN, ACTING ASSISTANT SECRETARY IN THE BUREAU OF ECONOMIC AND BUSINESS AFFAIRS, U.S. DEPARTMENT OF STATE**

I, Amy Holman, declare as follows:

1.      I am the Acting Assistant Secretary in the Bureau of Economic and Business Affairs within the United States Department of State. I have held this position since June 28, 2024. Prior to becoming Acting Assistant Secretary in the Bureau of Economic and Business Affairs, I was the Bureau's Principal Deputy Assistant Secretary. In my current position, I oversee the Bureau in the Department of State tasked with developing and implementing sanctions policy.

1

2.      I submit this declaration in support of the U.S. Department of State's Motion to Dismiss.

Specifically, I address herein (i) the U.S. Government's interest in E.O. 14115; (ii) the State

Department's application of E.O. 14115; (iii) U.S. sanctions programs and Constitutionally protected

activity; (iv) additional sanctions authorities used by the Executive Branch to address violence and

instability in the West Bank; (v) the redress process available to persons designated for sanctions by

the State Department; and (vi) the State Department's role in the visa process under section 4 of the

Order.

3.      The statements made herein are based on my personal knowledge and information made

available to me while carrying out my duties and responsibilities as Acting Assistant Secretary.

**I.      The U.S. Government's Interest in E.O. 14115**

4.      The United States government is concerned about the escalation of violence and instability

in the West Bank. The United States has long been committed to supporting a comprehensive peace

agreement that would permanently resolve the Israeli-Palestinian conflict and resolve the final status

of the West Bank and Gaza.  U.S. policy has been for many years that a two-state solution is

essential to ensuring both Israelis and Palestinians alike can attain equal measures of security,

prosperity, and freedom.  Violence and instability in the West Bank undermines the prospect of a

two-State solution and creates insecurity for Israelis and Palestinians alike.   Extremist violence

against civilians, whatever their national origin, ethnicity, or religion, cannot be justified, nor can

other acts of property destruction, displacement of civilians, or harassment that threaten peace,

security or stability in the West Bank.  Those who are responsible for such actions must be held to

account.  The Government of the United States has continued to call on the Government of Israel

and relevant Palestinian authorities to bring relevant actors to justice and to take the necessary

preventive measures.  High levels of violence, forced displacement of people and villages, and

property destruction in the West Bank cause intense human suffering, harm Israel's security, and

2

seriously undermine the prospect for peace and stability in the West Bank and Gaza, Israel, and the broader Middle East region.

5.      Additionally, this harm to Israel's security and the potential for broader regional destabilization presents a threat to U.S. personnel and interests. For these reasons, the President has determined that these activities constitute an unusual and extraordinary threat to the national security and foreign policy of the United States.

6.      To address these actions, and in order to promote accountability for those responsible, the United States has implemented a series of measures including Executive Order 14115: Imposing Certain Sanctions on Persons Undermining Peace, Security, and Stability in the West Bank. Exec. Order No. 14115, 89 Fed. Reg. 7605 (Feb. 5, 2024) ("E.O. 14115" or "the Order"). E.O. 14115 establishes U.S. authority to issue financial sanctions against those directing or participating in certain actions, including actions that threaten the peace, security and stability of the West Bank, acts or threats of violence against civilians, intimidating civilians causing them to leave their homes, destroying or seizing property, or engaging in terrorist activity affecting the West Bank.

## II.    The State Department's Application of E.O. 14115 and its "Peace Stability and Security Prong" (Section 1(a)(i)(A))

7.      Since E.O. 14115 was signed on February 1, 2024, the Secretary of State, in consultation with the Secretary of the Treasury, has designated 24 individuals and entities for sanctions under the Order. Of these, four individuals and entities have been designated by the Secretary of State under the "Peace Stability and Security" (PSS) prong that is the subject of this litigation. See § 1(a)(i)(A).[1] These designees are entities Lions' Den, Lehava, and TZAV 9, and David Chai Chasdai. All four State Department PSS designees have engaged in violent activities affecting the West Bank, which, in many instances, resulted in the deaths of Palestinian or Israeli civilians.  None of these four

---

[1] The Treasury Department has also designated two targets under the PSS prong (as well as for other bases).

designees have sought administrative delisting or challenged their designation. A description of each designation, based on the Department's public messaging, follows.

8.     First, Lions' Den is a violent extremist Palestinian organization that claimed responsibility for several drive-by shootings in the Nablus area of the West Bank. Lions' Den fighters also injured and killed Palestinian civilians during clashes with the Palestinian Authority Security Forces, and targeted Israeli security forces with small arms at an Israeli checkpoint. In addition to the PSS prong, Lions' Den was also designated under Section 1(a)(i)(B)(1) for being responsible for or complicit in, or having directly or indirectly engaged or attempted to engage in planning, ordering, otherwise directing, or participating in an act of violence or threat of violence targeting civilians, affecting the West Bank.[2]

9.     Second, Lehava is a nonprofit organization that has grown into the largest violent extremist organization in Israel whose members (which number more than 10,000) have engaged in acts of violence against Palestinians. In addition to the PSS prong, Lehava was designated under Section 1(a)(i)(B)(1) for being responsible for or complicit in, or for having directly or indirectly engaged or attempted to engage in planning, ordering, otherwise directing, or participating in an act of violence or threat of violence targeting civilians, affecting the West Bank, as well as under Section 1(a)(iv) for being owned or controlled by, or for having acted or purported to act for or on behalf of, directly or indirectly, Ben Zion Gopstein,[3] a person designated under E.O. 14115.[4]

---

[2] https://www.state.gov/sanctioning-violent-palestinian-group-in-the-west-bank/
[3] Mr. Gopstein was designated under Section 1 (a)(ii)(A) of Executive Order (E.O.) 14115 for being a leader or official of an entity that has engaged in, or whose members have engaged in, planning, ordering, otherwise directing, or participating in an act of violence or threat of violence targeting civilians, affecting the West Bank, relating to his tenure, as well as for being a leader or official of an entity that has engaged in, or whose members have engaged in, actions—including directing, enacting, implementing, enforcing, or failing to enforce policies—that threaten the peace, security, or stability of the West Bank, relating to his tenure.
[4] https://www.state.gov/designation-of-individuals-and-entities-contributing-to-violence-and-instability-in-the-west-bank/

App.0017

10.     Third, TZAV 9[5] is a violent extremist Israeli group that has prevented lifesaving humanitarian assistance from reaching Palestinian civilians by blocking, harassing and damaging aid convoys carrying lifesaving humanitarian assistance through the West Bank to Palestinian civilians in Gaza. The group blockaded roads and dumped vital humanitarian supplies onto the ground. On May 13, 2024, TZAV 9 members looted and set fire to aid trucks near Hebron in the West Bank that were destined for Gaza.[6]

11.     Fourth, David Chai Chasdai, an Israeli citizen, was designated under the PSS prong after he initiated and led a riot in Huwara, which involved setting vehicles and buildings on fire, assaulting Palestinian citizens, and damaging property. The riot resulted in the death of a Palestinian civilian.[7]

12.     None of the four persons designated under the PSS prong were targeted for their religious identity or political advocacy. Rather, they were designated because they engaged in conduct that threatened to further destabilize the West Bank, harming both Israel's security and U.S. foreign policy interests.

### III.   U.S. Sanctions Programs and Constitutionally Protected Activity

13.     Across U.S. Government sanctions programs, the State Department does not sanction individuals or entities ("persons") because of their engagement in activities that are protected by the U.S. Constitution, including protected religious beliefs, practices, and speech. For purposes of E.O. 14115, the State Department imposes sanctions on the basis of conduct, not on the basis of speech

---

[5] The Department has also designated Reut Ben Haim (also known as Reut Ben Chaim), who is a cofounder and chairperson of TZAV 9 and the wife of Plaintiff Yosef Ben Haim. Ms. Ben Haim was designated under E.O. Section 1(a)(ii)(A) for being or having been a leader or official of an entity (TZAV 9) that has engaged in, or whose members have engaged in, actions that threaten the peace, security, or stability of the West Bank, relating to her tenure. *See* https://www.state.gov/designation-of-individuals-and-entities-contributing-to-violence-and-instability-in-the-west-bank/
[6] https://www.state.gov/sanctioning-israeli-group-for-disrupting-and-destroying-humanitarian-aid-to-civilians/
[7] https://www.state.gov/announcement-of-further-measures-to-promote-peace-security-and-stability-in-the-west-bank/

App.0018

or pure advocacy.  In a similar vein, U.S. persons do not violate U.S. sanctions when they engage in Constitutionally protected activities, such as mere speech or advocacy, or protected religious practices.

### IV.    Additional Sanctions Authorities Used to Address Violence and Instability in the West Bank

14.    For decades, the Secretary of State has designated numerous Palestinian terrorist groups and actors operating in the West Bank as Foreign Terrorist Organizations and/or Specially Designated Global Terrorists.

15.    Foreign Terrorist Organizations (FTOs) are foreign organizations that are designated by the Secretary of State in accordance with section 219 of the Immigration and Nationality Act (INA), as amended. FTO designations play a critical role in the United States' fight against terrorism and are an effective means of curtailing support for terrorist activities.  Hamas, Palestine Islamic Jihad (PIJ), Popular Front for the Liberation of Palestine (PFLP), al-Aqsa Martyrs Brigade, Palestine Liberation Front (PLF) and Democratic Front for the Liberation of Palestine have all been designated FTOs.[8]

16.    In the immediate aftermath of September 11, 2001, then-President Bush signed Executive Order 13224, providing a means by which to disrupt the financial support network for terrorists and terrorist organizations by authorizing the U.S. government to designate and block the assets of foreign individuals and entities that commit, or pose a significant risk of committing, acts of terrorism or those that provide certain types of support to terrorists.   Under this authority, which was amended in 2019 by E.O. 13886, the Department of State has designated Hamas, Palestine Islamic Jihad (PIJ), Popular Front for the Liberation of Palestine (PFLP), al-Aqsa Martyrs Brigade

---

[8] https://www.state.gov/foreign-terrorist-organizations/

App.0019

and Palestine Liberation Front (PLF) as Specially Designated Global Terrorists, as well as many of these groups' leaders.[9]

17.      With respect to Hamas, Treasury and State sanctions designations of the group's leaders, financial facilitators, investments, entities, and instrumentalities span over two decades, and have blocked tens of millions of dollars linked to Hamas from transiting the U.S. financial system. The United States government has designated hundreds of individuals and entities in connection with Hamas and continues to use all of our tools to target Hamas, its financiers, and its financial transfer mechanisms that funnel funds in support of Hamas's terrorist activities.

18.      Since October 7, 2023, the United States has taken no fewer than eight actions targeting actors affiliated with Hamas, imposing new sanctions on 64 new targets.  This includes most recently on October 7, 2024, targeting three individuals and one sham charity that are prominent international financial supporters of Hamas, one Hamas-controlled financial institution in Gaza, and a longstanding Hamas supporter and nine of his businesses.  Previous designations include the April 12, 2024 sanctioning Hamas cyber actors, and the October 18, 2023 and October 27, 2023 designations, targeting sources of Hamas financing and financial facilitators. The United States coordinates with its partners in targeting Hamas, including a joint designation with Australia and the United Kingdom on January 22, 2024 that targeted Hamas financial facilitators, as well as three actions with the United Kingdom on March 27, 2024, December 13, 2023 and November 14, 2023, targeting Hamas leaders and financiers.

## V.    The Redress Process Available to Persons Designated for Sanctions by the State Department

19.      The power and integrity of U.S. sanctions programs derive not only from the U.S. government's ability to designate and add persons to sanctions lists but also from its willingness to

---

[9] https://www.state.gov/executive-order-13224/#state

App.0020

remove persons from such lists consistent with the law.   Numerous persons are removed from the List of Specially Designated Nationals and Blocked Persons ("SDN List")—the principal list of persons subject to U.S. sanctions—each year. Designated persons may submit a Delisting Petition (also known as a "Request for Removal," or "Request for Reconsideration").   Where the Department of State, in consultation with the Department of the Treasury, designated the person requesting delisting, the Department of State also serves as the agency adjudicating the delisting petition.

20.    Because of the high priority the USG places on the integrity of sanctions lists, each Petition is subject to a rigorous review process. All Petitions are reviewed individually on their merits. In the past, persons have been removed from the SDN List by demonstrating a positive change in their behavior, that the basis for their designation no longer exists, or that they were designated due to mistaken identity.

21.    Persons may submit a Petition themselves without hiring an attorney. The steps for filing a Delisting petition are publicly available on the State Department's website.[10]

## VI.    The Department's Role in the Visa Process Under Section 4 of the Order

22.     E.O. 14115 section 4 generally restricts the entry of noncitizens designated pursuant to section 1, and provides implementation authority to both the Department of State and the Department of Homeland Security. Section 4(b) instructs the Secretary of State to implement the Order's entry restrictions with respect to visas. The order expressly applies to "noncitizens" and does not authorize the State Department to impose visa restrictions for U.S. citizens. See § 4(b).

23.    Section 4(b) further authorizes the Secretary of State, in consultation with the Secretary of Homeland Security, to establish procedures for implementing such visa restrictions. Those

---

[10] See Delisting Guidance for Those Designated for Sanctions by the Department of State, U.S. Dep't of State, https://www.state.gov/sanctions-delisting/.

App.0021

procedures are set forth in Presidential Proclamation 8693 (Suspension of Entry of Aliens Subject to United Nations Security Council Travel Bans and International Emergency Economic Powers Act Sanctions). See § 4(d).

24.     The Secretary of State maintains the discretionary authority to determine on a case-by-case basis whether the entry of a noncitizen subject to the Order is not contrary to the interests of the United States.  See § 4(a).  Such a determination could permit visa issuance in certain circumstances, subject to eligibility under other U.S. immigration laws and regulations.  Under section 222(f) of the Immigration and Nationality Act, visa records are confidential and therefore details of such determinations, with limited exceptions, may not be disclosed.


In accordance with 28 U.S.C. section 1746, I certify and declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.


Dated: October __, 2024


Amy Holman
Acting Assistant Secretary
Bureau of Economic and Business Affairs
U.S. Department of State

9

# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| **TEXANS FOR ISRAEL,** *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **U.S. DEPARTMENT OF THE TREASURY,** *et al.*, <br><br> **Defendants.** | Civil Action No. 2:24-CV-00167-Z |

**DECLARATION OF JAMES MARTINELLI**

I, James Martinelli, declare the following to be a true and correct statement of facts:

      1.      I am the Acting Associate Director for the Policy Division of the Financial Crimes Enforcement Network (FinCEN), a bureau within the United States Department of the Treasury. I have held this position since March 2024. I previously served in several other roles within FinCEN, including as Deputy Associate Director for the FinCEN Policy Division, Director of FinCEN's Office of Regulatory Policy, and Section Chief for Regulatory Interpretation at FinCEN. In my official capacity as Acting Associate Director for the FinCEN Policy Division, I participate in the supervision of many aspects of FinCEN operations, including FinCEN's Alerts. I am also familiar with the FinCEN Alert entitled "FinCEN Alert on Israeli Extremist Settler Violence Against Palestinians in the West Bank" ("FinCEN Alert").[1]

---

[1] FinCEN, *FinCEN Alert on Israeli Extremist Settler Violence Against Palestinians in the West Bank, FIN-2024-Alert001* (Feb. 1, 2024), *available at* https://www.fincen.gov/sites/default/files/shared/FinCEN_Alert_Extremist_Violence_FINAL_2.1.24.pdf.

2.      The statements I make in this declaration are made on the basis of my personal knowledge, upon information acquired by me from FinCEN staff through the performance of my official duties, and upon conclusions reached and determinations made in accordance therewith. This declaration is made in connection with Defendants' Motion to Dismiss.

## FINCEN AND THE BANK SECRECY ACT

3.      FinCEN was created in 1990 and became a bureau of the U.S. Department of the Treasury by virtue of the USA PATRIOT Act of 2001.  The Director of FinCEN is appointed by the Secretary of the Treasury and reports to the Under Secretary for Terrorism and Financial Intelligence.

4.      The mission of FinCEN is to safeguard the financial system from illicit activity, counter money laundering and the financing of terrorism, and promote national security through strategic use of financial authorities and the collection, analysis, and dissemination of financial intelligence.  FinCEN carries out its mission by receiving and maintaining financial transactions data; analyzing and disseminating that data for law enforcement purposes, including both criminal and national security purposes; and building global cooperation with counterpart organizations in other countries and with international bodies.[2]

5.      FinCEN exercises regulatory functions primarily under the Currency and Foreign Transactions Reporting Act of 1970, as amended by Title III of the USA PATRIOT Act of 2001 and other legislation, a legislative framework that is commonly referred to as the "Bank Secrecy Act" or "BSA."  The BSA is the nation's first and most comprehensive Federal anti-money laundering and counter-terrorism financing (AML/CFT) statute.  The BSA authorizes the

---

[2] *See* FinCEN, *"What We Do," available at* https://www.fincen.gov/what-we-do#:~:text=What%20We%20Do.%20FinCEN%20is%20a%20bureau%20of%20the%20U.S (last visited Oct. 11, 2024).

App.0025

Secretary of the Treasury to, *inter alia,* require financial institutions to keep records and file reports that are determined to have a high degree of usefulness in criminal, tax, or regulatory matters, risk assessments or proceedings, or in the conduct of intelligence or counter-intelligence activities to protect against terrorism, and to implement AML/CFT programs and compliance procedures. The Secretary of the Treasury has delegated to the Director of FinCEN the authority to implement, administer, and enforce compliance with the BSA and associated regulations.[3]

6.      FinCEN is required to maintain "a government-wide data access service, with access, in accordance with applicable legal requirements," and makes this data available to authorized users to support law enforcement, intelligence, and regulatory agencies.[4] In addition, 31 U.S.C. § 310 directs FinCEN to "analyze and disseminate" data collected under the BSA to, among other things, "identify possible criminal activity to appropriate Federal, State, local, Tribal, and foreign law enforcement agencies" and "support ongoing criminal financial investigations and prosecutions and related proceedings, including civil and criminal tax and forfeiture proceedings."[5] In addition, FinCEN is required to

> Furnish research, analytical, and informational services to financial institutions, appropriate Federal regulatory agencies with regard to financial institutions, and appropriate Federal, State, local, Tribal, and foreign law enforcement authorities, in accordance with policies and guidelines established by the Secretary of the Treasury or the Under Secretary of the Treasury for Enforcement, in the interest of detection, prevention, and prosecution of terrorism, organized crime, money laundering, and other financial crimes.[6]

7.      FinCEN does not exercise authority under the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701-1706, or Executive Order 14115, "Imposing Certain

---

[3] *See* U.S. Dep't of the Treasury, Treasury Order 180-01, (January 14, 2020), *available at* https://home.treasury.gov/about/general-information/orders-and-directives/treasury-order-180-01.

[4] *See* 31 U.S.C. § 310(b)(2)(B).

[5] *See* 31 U.S.C. § 310(b)(2)(B).

[6] *See* 31 U.S.C. § 310(b)(2)(E).

3

App.0026

Sanctions on Persons Undermining Peace, Security, and Stability in the West Bank." (E.O.

14115).  FinCEN does not impose economic sanctions or enforce economic sanctions.

### FINCEN'S FINANCIAL INSTITUTION ADVISORY PROGRAM

8.      As part of fulfilling its mission to safeguard the financial system and promote

national security, FinCEN, through its Financial Institution Advisory Program, issues public and

non-public advisories, alerts, and notices to financial institutions concerning money laundering

or terrorist financing threats and vulnerabilities for the purpose of enabling financial institutions

to guard against such threats.  These advisories, alerts, and notices often contain illicit activity

typologies, red flags that facilitate monitoring, and guidance on complying with FinCEN

regulations to address those threats and vulnerabilities.  Financial institutions may use this

information to enhance their AML monitoring systems for more valuable suspicious activity

reporting.[7]  FinCEN advisories, alerts, and notices provide select red flags to assist financial

institutions in identifying and reporting suspicious activity, but they do not impose any legal or

regulatory obligations or prohibitions on any individuals, organizations, or entities.

9.      The FinCEN Policy Division is responsible for FinCEN's Financial Institution

Advisory Program, which includes alerts.  On or about February 1, 2024, FinCEN issued the

FinCEN Alert, consistent with FinCEN's authorities under the BSA.  The information contained

in the FinCEN Alert was derived from FinCEN's analysis of BSA data, open-source reporting,

and information provided by law enforcement partners.[8]  The FinCEN Alert provided select red

flags to assist financial institutions in identifying and reporting suspicious activity that may

---

[7] *See FinCEN, "Alerts/Advisories/Notices/Bulletins/Fact Sheets," available at*
https://www.fincen.gov/resources/advisoriesbulletinsfact-sheets (last visited Oct. 11, 2024).

[8] *See* FinCEN, *supra* note 1, at 2.

App.0027

finance Israeli extremist settler violence against Palestinians in the West Bank.[9]  The FinCEN

Alert did not impose any legal penalties or regulatory obligations, including on any parties to

transactions that may have been or could be identified in BSA filings.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of

the United States of America that the foregoing is true and correct.

Executed on October 14, 2024.

James R. Martinelli
Digitally signed by James R. Martinelli
Date: 2024.10.14 15:11:26 -04'00'

James Martinelli
Acting Associate Director, Policy Division
Financial Crimes Enforcement Network

---

[9] *See id*. at 1.

App.0028