**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| TEXANS FOR ISRAEL, *et al.*, | |
|      Plaintiffs, | |
| v. | Civil Action No. 2:24-CV-00167-Z |
| U.S. DEPARTMENT OF THE TREASURY, *et al.*, | |
|      Defendants. | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND .........................................................................................................................1

    A.    The Executive Order ....................................................................................1

    B.    Factual Allegations ........................................................................................3

LEGAL STANDARD .................................................................................................................4

ARGUMENT ..............................................................................................................................5

I.    THE NORTHERN DISTRICT OF TEXAS IS AN IMPROPER VENUE FOR
THIS CASE. .....................................................................................................................5

    A.    Venue cannot be predicated on Isley or Texans for Israel because they lack
Article III standing. ........................................................................................5

        i.    Isley and Texans for Israel lack Article III standing. ..........................5

        ii.    Because Isley and Texans for Israel Lack Standing, They Cannot
Serve as a Basis for Venue ........................................................6

    B.    Plaintiffs identify no events giving rise to Isley and Texans for Israel's claims
that occurred in this District. ..........................................................................7

II.    ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS MATTER TO
THE DISTRICT OF COLUMBIA IN THE INTERESTS OF JUSTICE UNDER
28 U.S.C. § 1404 (A). ....................................................................................................10

CONCLUSION ..........................................................................................................................13

# TABLE OF AUTHORITIES

## CASES

*A.J. Taft Coal Co. v. Barnhart,*
    291 F. Supp. 2d 1290 (N.D. Ala. 2003)........................................................................7

*Alaska v. U.S. Dep't of Agric.,*
    17 F.4th 1224 (D.C. Cir. 2021)................................................................................5

*Assoc. Gen. Contr. of Am., Inc. v. Fed. Acquisition Regul. Council,*
    --- F. Supp. 3d ---, 2024 WL 1078260 (W.D. La. Mar. 12, 2024).................................6, 8, 9

*Bigham v. Envirocare of Utah, Inc.,*
    123 F. Supp. 2d 1046 (S.D. Tex. 2000)...................................................................8

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.,*
    2023 WL 2975164 (N.D. Tex. Apr. 17, 2023)........................................................10

*Denning v. Bond Pharmacy, Inc.,*
    50 F.4th 445 (5th Cir. 2022)..................................................................................4

*E.T. v. Paxton,*
    41 F.4th 709 (5th Cir. 2022)..................................................................................4

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.,*
    618 F.3d 1153 (10th Cir. 2010)..............................................................................8

*Guajardo v. State Bar of Tex.,*
    803 F. App'x 750 (5th Cir. 2020)..........................................................................10

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501 (1947)............................................................................................11

*In re Gibson,*
    423 F. App'x 385 (5th Cir. 2011)..........................................................................12

*In re Planned Parenthood Fed'n of Am., Inc.,*
    52 F.4th 625 (5th Cir. 2022).................................................................................13

*In re Radmax, Ltd.,*
    720 F.3d 285 (5th Cir. 2013).................................................................................12

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008).................................................................10, 11, 12, 13

*Inst. of Certified Pracs., Inc. v. Bentsen,*
    874 F. Supp. 1370 (N.D. Ga. 1994)........................................................................7

*Keane v. Velarde,*
   No. 3:20-CV-00977 (VAB), 2021 WL 4248896 (D. Conn. Sept. 17, 2021)........................7

*Langton v. Cheyond Comm'n, LLC,*
   282 F. Supp. 2d 504 (E.D. Tex. 2003)..............................................................................4

*Laufer v. Mann Hosp., LLC,*
   996 F.3d 269 (5th Cir. 2021)..........................................................................................4

*Lawson, v. U.S. Dep't of Just.,*
   527 F. Supp. 3d 894 (N.D. Tex. 2021)..............................................................................4

*Leroy v. Great W. United Corp.,*
   443 U.S. 173 (1979)...................................................................................................1, 8

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992)...................................................................................................4, 6

*McCuin v. Tex. Power & Light Co.,*
   714 F.2d 1255 (5th Cir. 1983)........................................................................................12

*Mich. Ass'n of Pub. Sch. Acads. v. U.S. Dep't of Educ.,*
   711 F. Supp. 3d 685 (W.D. Mich. 2024)..........................................................................6

*Miller v. Albright,*
   523 U.S. 420 (1998).........................................................................................1, 4, 6, 7

*Morris v. ARTA Travel,*
   2023 WL 8285022 (N.D. Tex. Nov. 30, 2023)..................................................................10

*Norwood v. Kirkpatrick,*
   349 U.S. 29 (1955)........................................................................................................10

*Positive Software Sols., Inc. v. New Century Mortg. Corp.,*
   476 F.3d 278 (5th Cir. 2007)..........................................................................................12

*Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.,*
   626 F.3d 973 (7th Cir. 2010)..........................................................................................11

*Sigoloff v. Austin,*
   2023 WL 2142982 (N.D. Tex. Feb. 21, 2023)..................................................................4

*Steen v. Murray,*
   770 F.3d 698 (8th Cir. 2014)..........................................................................................8

*Stewart Org., Inc. v. Ricoh Corp.,*
   487 U.S. 22 (1988)........................................................................................................11

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ..................................................................................................4

*Tactacell, LLC v. Deer Mgmt. Sys., LLC*,
620 F. Supp. 3d 524 (W.D. La. 2022).......................................................................8

*Turentine v. FC Lebanon II LLC*,
2022 WL 16951647 (N.D. Tex. Nov. 15, 2022) ................................................. 7, 8

*Van Dusen v. Barrack*,
376 U.S. 612 (1964)................................................................................................11

*Veba-Chemie A.G. v. M/V Getafix*,
711 F.2d 1243 (5th Cir. 1983).................................................................................10

*Zimmerman v. City of Austin*,
881 F.3d 378 (5th Cir. 2018)....................................................................................6

*Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*,
982 F. Supp. 2d 714 (W.D. Tex. 2013).....................................................................9

## STATUTES

28 U.S.C. § 1391................................................................................................ 4, 5, 6, 9

28 U.S.C. § 1404............................................................................................... 1, 10, 12

28 U.S.C. § 1406...................................................................................................... 1, 4

50 U.S.C. § 1701...........................................................................................................2

## REGULATIONS

Exec. Order 14115, 89 Fed. Reg. 7605 (Feb. 1, 2024) ..........................................*passim*

## OTHER AUTHORITIES

14D Charles Alan Wright & Arthur R. Miller, 14D Federal Practice & Procedure § 3815 (4th ed.)....7

Office of Foreign Assets Control, *Basic Information on OFAC & Sanctions*,
https://ofac.treasury.gov/faqs/1190.........................................................................2

Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed.) .......................... 11, 12

## INTRODUCTION

This case is primarily a challenge by persons residing overseas to Executive Order 14115 ("Imposing Sanctions on Persons Undermining Peace, Security, and Stability in the West Bank") ("EO 14115" or "the "EO"), which was signed by the President in Washington, D.C.  To create a nexus to the Northern District of Texas, the Complaint alleges that Plaintiff Michael Isley—a "longtime resident of Amarillo" and the president of Plaintiff Texans for Israel, *see* Compl. at 8 ¶ 24—fears that he or his organization could be sanctioned because they *may* choose to support foreign nationals who *may* take actions that *may* be regarded by Defendants as threatening the peace, security, and stability in the West Bank.

In a single, conclusory allegation, Plaintiffs allege that a substantial part of the actions giving rise to the claims occurred in this District. *Id.* at 8 ¶ 23.  Besides being unsupported by well-pleaded factual allegations, Plaintiffs' assertion of venue overlooks a foundational flaw: Isley and Texans for Israel lack Article III standing and therefore, under Supreme Court precedent, venue cannot be predicated on their unwarranted participation in this suit.  *See Miller v. Albright*, 523 U.S. 420, 426-27 (1998).

Even if these Plaintiffs had standing, however, venue in this District would still be improper. Plaintiffs allege no action giving rise to any claims that occurred here, and allegations that a plaintiff feels the effects of a defendant's conduct in a particular district do not support venue.  *Leroy v. Great W. United Corp.,* 443 U.S. 173, 183-87 (1979).  Accordingly, under 28 U.S.C. § 1406(a) this case must be dismissed or transferred to a venue where it "could have been brought."  Even still, if the Court were to find venue proper in this District, it should nevertheless, pursuant to 28 U.S.C. § 1404(a), transfer the case to the District of Columbia where the strongest connection to the parties, witnesses, and issues lies.  *See id.* § 1404(a).

## BACKGROUND

### A.  The Executive Order

This action commenced on August 08, 2024, and "challenges the constitutionality and legality of portions of Executive Order 14115."  Compl. at 1 ¶ 1.  The President promulgated EO 14115 on

February 1, 2024. *See id.* Under the International Emergency Economic Powers Act ("IEEPA"), the President is granted broad power to declare a national emergency "to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States." 50 U.S.C. § 1701(a). The Preamble to EO 14115 thus announces a Presidential finding that "high levels of extremist settler violence, forced displacement of people and villages, and property destruction—has reached intolerable levels and constitutes a serious threat to the peace, security, and stability of the West Bank and Gaza, Israel, and the broader Middle East region," and that "[t]hese actions undermine the foreign policy objectives of the United States, including the viability of a two-state solution and ensuring Israelis and Palestinians can attain equal measures of security, prosperity, and freedom." The situation in the West Bank "also undermine[s] the security of Israel" itself; has "the potential to lead to broader regional destabilization across the Middle East, threatening United States personnel and interests;" and therefore "constitute[s] an unusual and extraordinary threat to the national security and foreign policy of the United States." *Id.* It declares a national emergency to deal with these threats. *Id.*

Under Section 1 of the EO, "any foreign person determined by the Secretary of State, in consultation with the Secretary of the Treasury, or the Secretary of the Treasury, in consultation with the Secretary of State" who is found to be "responsible for or complicit in, or to have directly or indirectly engaged or attempted to engage in . . . actions – including directing, enacting, implementing, enforcing, or failing to enforce policies – that threaten the peace, security, or stability of the West Bank" may be sanctioned. *Id.* §1(a)(i)(A). Such actions do not include "activities subject to U.S. constitutional protection" and U.S. persons do not "violate OFAC sanctions for engaging in such constitutionally protected activity." *See* Office of Foreign Assets Control, *Basic Information on OFAC & Sanctions*, https://ofac.treasury.gov/faqs/1190 (last visited Oct. 9, 2024).

The prohibitions of Section 1 apply "except to the extent provided by statutes, or in regulations, orders, directives, or licenses." EO 14115 § 2. Persons designated pursuant to EO 14115 are referred to as "Specially Designated Nationals or Blocked Persons" ("SDNs"). The Office of

Foreign Assets Control ("OFAC") maintains a list of such individuals or entities whose assets are blocked; this list is known as the SDN List.

Section 4 of the EO concludes that the entry of noncitizens of such designated persons "would be detrimental to the interests of the United States," and thus suspends "the entry of such persons into the United States." *Id.* § 4. It permits, however, an exception for "when the Secretary of State or the Secretary of Homeland Security, as appropriate, determines that the person's entry would not be contrary to the interests of the United States." *Id.*

### B. Factual Allegations

Plaintiff Michael Isley, the president of Plaintiff Texans for Israel, has a "profound appreciation for and religious commitment to Israel." Compl. at 9 ¶ 28. His organization's mission is "to extend aid to individuals, organizations, and communities, focusing especially on those in the heartland of Israel." *Id.* at 8-9 ¶ 25. In furtherance of this mission, Isley and Texans for Israel have donated to organizations, and invited a number of non-designated "individuals to visit the United States in order to assist them in their fundraising efforts and to provide them with a platform for educating Americans on the moral, historical, and religious right of the Jewish people to live and be sovereign in the West Bank." *Id.* at 10-11 ¶¶ 31-35. But because of EO 14115, Isley fears "that he himself, as well as his organization Texans for Israel, could be subjected to sanctions without prior notice, and this fear has chilled his ability to continue to support the invitation of the above-mentioned individuals to the United States to enable them to speak to government officials and ordinary citizens about Israel." *Id.* at 11 ¶ 36. He also alleges that he, and his organization, are "unable to invite blocked persons or entities to events in the US." *Id.* at 46-47 ¶ 171.

Plaintiffs also include Ari Abramowitz, a dual U.S-Israeli citizen residing in the West Bank, *id.* at 11 ¶ 37; Regavim, A.R., an Israeli non-profit organization, *id.* at 13-14 ¶ 46; Meir Deutsch, a dual U.S.-Israeli citizen residing in the West Bank, *id.* at 16 ¶ 55, and Yosef Ben Chaim, a dual U.S.-Israeli citizen residing in Israel, *id.* at 17 ¶ 58. These Plaintiffs allege no injury occurring in the Northern District of Texas. *See generally*, Compl. Plaintiffs challenge the Executive Order under the Religious

3

Freedom Restoration Act (Count I), the First Amendment (Counts II and III), the Fifth Amendment (Counts IV and V), and the APA (Count VI).

## LEGAL STANDARD

Venue may not be established in a district based on the location of plaintiffs that lack Article III standing. *See Miller*, 523 U.S. at 426-27. To establish standing, a plaintiff must demonstrate that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 450 (5th Cir. 2022).[1] The injury must be "both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *E.T. v. Paxton*, 41 F.4th 709, 715 (5th Cir. 2022); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). At the pleading stage, the plaintiff's "burden is to allege a plausible set of facts establishing jurisdiction." *Laufer v. Mann Hosp., LLC*, 996 F.3d 269, 271 (5th Cir. 2021). Where, as here, a plaintiff is not "the object of the government action or inaction" at issue, standing is "substantially more difficult to establish." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

In cases brought against federal officials or a federal agency, venue is proper only in a "judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). While "[t]here is a split of authority among federal courts and in the Fifth Circuit, . . . the majority of courts place the burden of establishing venue on the plaintiff." *See, e.g.*, *Lawson, v. U.S. Dep't of Just.*, 527 F. Supp. 3d 894, 896 (N.D. Tex. 2021) (adopting this rule as "the better approach"); *Sigoloff v. Austin*, 2023 WL 2142982, at *1 (N.D. Tex. Feb. 21, 2023) (same); *see also Langton v. Cheyond Comm'n, LLC*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003) (same). If a case is filed in an improper venue, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

---

[1] Internal quotations and citations omitted throughout this brief unless otherwise noted.

**ARGUMENT**

This case lays venue in the wrong district and should be dismissed or transferred to the most appropriate proper venue:  the United States District Court for the District of Columbia.

I.     **THE NORTHERN DISTRICT OF TEXAS IS AN IMPROPER VENUE FOR THIS CASE.**

Plaintiffs invoke the second category under 28 U.S.C. § 1391(e)(1), alleging that venue is proper because "[a] substantial part of the events giving rise to this claim occurred in this district, and each Defendant is an officer of the United States sued in his or her official capacity."  Compl. at 8 ¶ 23. For the reasons below, this argument fails at each step.

A.   **Venue cannot be predicated on Isley or Texans for Israel because they lack Article III standing.**

In the Complaint, Michael Isley and Texans for Israel are the cornerstone of Plaintiffs' claim to venue, as Plaintiffs allege that a "substantial part of the events giving rise to this claim" occurred in the Northern District of Texas.  *See id.*  Because neither Isley nor Texans for Israel have adequately alleged Article III standing, this approach fails.

i.     *Isley and Texans for Israel lack Article III standing.*

As Defendants argue in their Motion to Dismiss, which Defendants incorporate here by reference, Isley and Texans for Israel lack Article III standing.  *See* Defs.' Brief in Support of Mot. to Dismiss, ECF No.47.  At bottom, they plead an attenuated, hypothetical chain which insufficient to demonstrate standing for four main reasons.  First, Mr. Isley's fear of being subject to U.S. sanctions is wholly speculative when he is solely a U.S. person, and only "foreign persons" are subject to designation under Section 1 of EO 14115.  Second, even if he had identified some other effect of U.S. sanctions imposed on others, Isley does not allege that the individuals and entities he supports are on OFAC's SDN List.  *See generally* Compl.  Thus, any possible future injury relies on a chain of speculative assumptions which is insufficient for Article III standing.  *See, e.g., Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1229 (D.C. Cir. 2021) (declining to "speculate about future actions by policymakers,"

5

particularly where the policy is "controversial" and "[i]ntervening events . . . are unpredictable" such that "[t]he content of any future regulation is currently unknowable"). Third, Isley's alleged "chill" of activities in insufficient to establish standing, as standing cannot be fabricated from a self-inflicted injury. *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018). And fourth, although Isley claims an inability to invite blocked persons to the U.S., he does not identify any blocked person he wishes to invite. *See Lujan*, 504 U.S. at 563-64 (holding that "some day intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the actual or imminent injury that our cases require").

Because Isley does not have standing, Texans for Israel cannot establish standing as his representative. *Id.* at 563 (stating that a single member with standing in his or her own right is sufficient to establish that an organization has standing). And like Isley, Texans for Israel cannot satisfy Article III in its own right where it fails to identify any specific individuals on the SDN List that it cannot invite to the United States, nor any specific fundraising events it cannot hold since the issuance of EO 14115. Without an injury, Texans for Israel does not have standing. *Id.*

### ii. *Because Isley and Texans for Israel Lack Standing, They Cannot Serve as a Basis for Venue*

As the Supreme Court has held, where an individual Plaintiff serving as the sole basis for venue in a particular judicial district lacks standing, venue in turn is improper. *See Miller*, 523 U.S. at 426-27 ("[T]he District Court concluded that Mr. Miller did not have standing and dismissed him as a party. Because venue in Texas was therefore improper, *see* 28 U.S.C. § 1391(e), the court transferred the case to the District Court for the District of Columbia, the site of the Secretary's residence."). Other courts are in accord. *See, e.g., See Assoc. Gen. Contr. of Am., Inc. v. Fed. Acquisition Regul. Council*, --- F. Supp. 3d ---, 2024 WL 1078260, at *9 (W.D. La. Mar. 12, 2024); *Mich. Ass'n of Pub. Sch. Acads. v. U.S. Dep't of Educ.*, 711 F. Supp. 3d 685, 692 (W.D. Mich. 2024) (concluding that "the Western District of Michigan is no longer the venue best suited to adjudicate this matter" where the Michigan plaintiff "lack[ed]

6

standing"); *Keane v. Velarde*, No. 3:20-CV-00977 (VAB), 2021 WL 4248896, at *5 (D. Conn. Sept. 17, 2021) (transferring case to the Southern District of New York where the "only party residing in Connecticut" was dismissed for lack of standing); *Inst. of Certified Pracs., Inc. v. Bentsen,* 874 F. Supp. 1370, 1372 (N.D. Ga. 1994) ("Having found that the Institute lacks standing to bring this action and has failed to state a claim upon which relief can be granted, plaintiff cannot manufacture venue by adding the Institute as a party."); *A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1304 (N.D. Ala. 2003) ("Venue is proper in this court because at least one Alabama plaintiff had standing."); *cf.* 14D Charles Alan Wright & Arthur R. Miller, 14D Federal Practice & Procedure § 3815 (4th ed.) ("[V]enue cannot be based on the joinder of a plaintiff" that has been added "for the purpose of creating venue in the district.").

Because Isley and Texans for Israel have not adequately alleged standing, venue cannot be premised upon their residence or claimed injury. *See Miller*, 523 U.S. at 426-27. And without Isley and Texans for Israel, nothing ties Plaintiffs' claims to the Northern District of Texas. Accordingly, the Court should transfer this case to the district where the challenged EO was drafted and enacted: the U.S. District Court for the District of Columbia. *See id.*

## B. Plaintiffs identify no events giving rise to Isley and Texans for Israel's claims that occurred in this District.

Even if Isley and Republicans for Israel had standing, their claim to venue in the Northern District of Texas would nevertheless fail. Plaintiffs allege that venue is proper because "a substantial part of the events giving rise to this claim occurred in this district." Compl. at 8 ¶ 23. But Plaintiffs' central complaint in this case is Defendants' alleged actions in Washington, D.C. to promulgate and implement EO 14115. *Id.* at 1-4 ¶¶ 1-9. Their claims did not occur in this District.

To determine whether venue is proper in a district based upon the occurrence of a "substantial part of the events or omissions," a court "looks to the defendant's conduct and where that conduct took place." *Turentine v. FC Lebanon II LLC*, 2022 WL 16951647, at *2 (N.D. Tex. Nov. 15, 2022)

(cleaned up).  "Actions taken by a plaintiff do not support venue." *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000).  Nor do allegations that a plaintiff "feels the effects of a defendant's conduct" in a particular district support venue.  *Id.*; *Leroy*, 443 U.S. at 183-87; *see also Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014) (in evaluating venue, "the court's focus must be on relevant activities of the defendant in the forum state, not on the effect of those activities on the plaintiff in the forum state").  The events giving rise to an executive order occur where the executive order is "drafted and enacted." *Assoc. Gen. Contr. of Am.*, 2024 WL 1078260, at *8 (concluding that venue under § 1391(e)(1)(B) was improper where a plaintiff sought a nationwide injunction on an executive order which was drafted and enacted in Washington, D.C.).

Here, rather than identify any relevant conduct by Defendants within this District, Isley, a "longtime resident of Amarillo," Compl. at 8 ¶ 24, gestures to an alleged "chill" which he experiences, *id.* at 11 ¶ 36.  He asserts that he is dissuaded from inviting individuals residing in abroad "to visit the United States," or to financially support those living in the West Bank and Gaza because of a fear of sanction. *See id.* at 11 ¶¶ 34-36.  But that theory of venue is flatly inconsistent with the Supreme Court's decision in *Leroy v. Great Western United Corp.*, which makes clear that a claim does not "arise" in a District merely because some of its effects may be felt there.  *See* 443 U.S. at 183-87; *Steen*, 770 F.3d at 703. Having identified no conduct of Defendants that occurred in this District, venue is improper under § 1391(e)(1).  *See Turentine*, 2022 WL 16951647, at *2.

Moreover, none of the meagre factual allegations Plaintiffs offer involves "*substantial* events material to those claims [that] occurred in the forum district." *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010) (emphasis added).  To qualify as substantial, "material acts or omissions within the forum [must] bear a close nexus to the claims." *Tactacell, LLC v. Deer Mgmt. Sys., LLC*, 620 F. Supp. 3d 524, 530 (W.D. La. 2022).  "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's

8

claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013).  Even if an alleged "chill" in Amarillo could be considered an event occurring in this District (it cannot), a *substantial* portions of the events underlying Plaintiffs' claim did not in the Northern District of Texas.  Rather, Plaintiffs' claims center around the President's statutory authority to issue an Executive Order, and subsequent decisions made in Washington D.C. to sanction certain individuals or entities—none of whom are even located in this District.  Moreover, although Isley and Texans for Israel claim they have been dissuaded from inviting individuals to speak about the West Bank and Gaza, they do not allege a chill from inviting individuals into this District specifically, as they allege a chill from inviting individuals into the United States broadly.  *See* Compl. at 11 ¶ 34 (alleging that Isley is "chilled" from inviting individuals to the United States); *id.* at 46-47 ¶ 171 (alleging an inability to invite "blocked persons or entities to events in the US"); *id.* at 47 ¶ 174 (alleging "the inability of an individual to invite speakers to events in the United States").

Further, Plaintiffs seek an injunction prohibiting the implementation and enforcement of the EO "both as to Plaintiffs and as to any similarly situated persons who likewise object to EO 14115 on religious or speech grounds."  *Id.* at 66 (Prayer for Relief ¶ d).  Their claims thus do not even hinge on the EO's application in this particular District; rather, Plaintiffs are attempting to enjoin the EO across the board, including as to parties not before this Court.  *See Assoc. Gen. Contr. of Am., Inc.*, --- F. Supp. 3d ---, 2024 WL 1078260, at *8 (concluding venue was improper in the Western District of Louisiana where the plaintiffs' claims concerned the promulgation of a rule and its enforcement nationwide).  It thus cannot be said that a *substantial* portion of the events underling Plaintiffs' claims occurred in this District. *See* 28 U.S.C. § 1391(e)(1)(B).

What is more, the Complaint does not even purport to allege that events giving rise to Counts IV and V occurred in this District.  Plaintiffs' venue allegations revolve around the effects felt by Isley

and Republicans for Texas in Amarillo, while Counts IV and V appear to be brought by only Deutsch, Ben Chaim, and Abramowitz. *See* Compl. at 58-63, ¶¶ 178-98. But a plaintiff bears the burden of proving that venue is proper "for each claim that a plaintiff brings against a defendant." *Guajardo v. State Bar of Tex.*, 803 F. App'x 750, 755 (5th Cir. 2020); *see also Morris v. ARTA Travel*, 2023 WL 8285022, at *2 (N.D. Tex. Nov. 30, 2023); *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 2023 WL 2975164, at *1 (N.D. Tex. Apr. 17, 2023). Because Plaintiffs do not plead facts demonstrating that a substantial part of the events or omissions giving rise to Counts IV and V occurred in this District, at a minimum those claims must be dismissed or severed and transferred to a proper venue, namely the U.S. District Court for the District of Columbia.

## II.   ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS MATTER TO THE DISTRICT OF COLUMBIA IN THE INTERESTS OF JUSTICE UNDER 28 U.S.C. § 1404 (A).

Even if the Court finds that venue is proper in this District, it should nevertheless, pursuant to 28 U.S.C. § 1404(a), transfer the case to the District of Columbia. Under section 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (en banc). Transfer is warranted here "[f]or the convenience of parties and witnesses," and because transfer is "in the interest of justice[.]" 28 U.S.C. § 1404(a).

Transfers under section 1404(a) are to be more freely granted than dismissals ordered on forum non conveniens grounds. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) ("Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience" than had been required to dismiss on forum

non conveniens grounds); *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1247 (5th Cir. 1983). Moreover, it is well-settled "that the interest of justice is a factor . . . to be considered on its own" and where appropriate, may be "decisive . . . even when the other statutory factors of convenience of the parties and witnesses point in a different direction." Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed.) (collecting cases); *see also Van Dusen v. Barrack*, 376 U.S. 612, 626–27 (1964).

The public and private factors that guide the section 1404 analysis all favor transfer here. *See Volkswagen*, 545 F.3d at 315; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen*, 545 F.3d at 312. If the answer is yes, the Court must then determine whether the party that "seeks the transfer" has shown "good cause," meaning that it has "demonstrate[d] that the transferee venue is clearly more convenient." *Id.* at 315. The Court may consider any number of factors, including "private interest factors" such as "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The Court may also consider "public interest factors," such as "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* These factors "are not necessarily exhaustive or exclusive." *Id.* Further, the public factors collectively—which include "systemic integrity and fairness," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)— "may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

11

The private factors, which focus on the convenience of the parties and witnesses in litigating in the chosen District, militate in favor of transfer here. The challenged EO was conceived, drafted, and promulgated in Washington, D.C. The decisions regarding who will be placed on the sanctions list also occur in Washington, D.C. And the record underlying the EO and such decisions is located there as well. *See Volkswagen*, 545 F.3d at 316.

The public interest factors strongly favor transfer. This District has no "local interest" in having the case adjudicated here. *Id.* Only two of the six Plaintiffs have any connection to this District, and Plaintiffs' claims—which seek declaratory and injunctive relief seeking to enjoin enforcement of an Executive Order promulgated in Washington, D.C. to any "similarly situated" person anywhere in the country—also have no specific connection to this District. Where "virtually all of the events and witnesses regarding the case" would be located in Washington D.C., the Court should transfer to the U.S. District Court for the District of Columbia. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).

But even if the convenience factors did not clearly favor transfer to Washington, D.C.— which they do—"the interest[s] of justice," 28 U.S.C. § 1404(a), alone favor transfer. *See* Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (collecting cases). Not only is there no public interest in having this matter litigated in this District, the public's interest in the fair administration of justice would be harmed if a filing with strong indicia of judge shopping were left unchecked. This concern is heightened in single-judge divisions, such as here, where a party can effectively select its preferred judge. *See Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 292 (5th Cir. 2007) (Wiener, J. dissenting). Absent a clear connection to a particular District, filing in a single-judge division contributes to the "perception that different forms of justice would be available to litigants, depending upon the division in which a suit was filed," regardless of the impartiality of the judge sitting in the single-judge division. *In re Gibson*, 423 F. App'x 385, 388 (5th Cir. 2011). This practice

conflicts with the principle that, "[i]n federal court, the parties clearly have no right to a 'judge of their choice.'" *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1262 (5th Cir. 1983).

In short, Plaintiffs seek to broadly invalidate an Executive Order, in a single-judge division by identifying an individual and an organization in Amarillo who have speculated self-inflicted injuries, based on a fear of events that may never materialize. Because the District Court for the District of Columbia "ha[s] a greater 'stake' in the litigation" that this District, *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 632 (5th Cir. 2022) (citing *Volkswagen*, 545 F.3d at 317–18), and there is no clear connection between this case and Amarillo, the Court should transfer this case to the U.S. District Court for the District of Columbia.

## CONCLUSION

For these reasons, the Court should dismiss this case or transfer the action to the U.S. District Court for the District of Columbia.

Dated: October 15, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Dorothy Matilda Canevari*
AMY POWELL
Senior Trial Counsel
DOROTHY CANEVARI
ALEXANDER N. ELY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Washington, DC 20005
Tel.: (202) 616-8040
Email: dorothy.m.canevari@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2024, I electronically field this brief with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*/s/ Dorothy Matilda Canevari*
DOROTHY M. CANEVARI
U.S. Department of Justice

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that on October 7 and 15, 2024, Defendants' counsel conferred with counsel for Plaintiffs regarding this motion pursuant to Local Civil Rule 7.1. Plaintiffs oppose Defendants' motion.

<u>/s/ Dorothy Matilda Canevari</u>
DOROTHY M. CANEVARI
U.S. Department of Justice
